# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

TROY PATRICK WYRE                          **CIVIL ACTION**

**VERSUS**                                             **NO. 13-201-JWD-RLB**

**COMMISSIONER OF**
**THE SOCIAL SECURITY**
**ADMINISTRATION**

## NOTICE

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the findings of fact and conclusions of law recommended by the Magistrate Judge. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME WILL BE GRANTED TO FILE OBJECTIONS TO THE REPORT AND RECOMMENDATION.**

Signed in Baton Rouge, Louisiana, on January 22, 2015.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**TROY PATRICK WYRE**                                  **CIVIL ACTION**

**VERSUS**                                             **NO. 13-201-JWD-RLB**

**COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION**

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff, Troy Patrick Wyre (Plaintiff), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for a period of disability and disability insurance benefits "under Title II and part A of Title XVIII of the Social Security Act." (Tr. 139-45).[1]  For the reasons given below, the Court recommends that the Commissioner's decision be **AFFIRMED** and Plaintiff's appeal be **DISMISSED** with prejudice.

## I.    PROCEDURAL HISTORY

On April 21, 2010, Plaintiff filed an application for benefits alleging a disability onset date of February 19, 2008. (Tr. 58, 139-45).  The claim was initially denied and Plaintiff filed a timely request for a hearing that was held on August 26, 2011[2] at which Plaintiff, represented by counsel, appeared and testified. (Tr. 31-49, 71).  A vocational expert (VE), William Stampley,

---

[1] References to documents filed in this case are designated by: (R. Doc. [docket entry number(s)] at [page number(s)]).  References to the record of administrative proceedings filed in this case are designated by: (Tr. [page number(s)]).

[2] Plaintiff's hearing was initially convened on May 10, 2011 before Administrative Law Judge Glenn A. Neal. (Tr. 50-57).  That hearing was deferred, however, at Plaintiff's request to allow him additional time to retain counsel.

also testified. (Tr. 47-49). At the hearing, Plaintiff's attorney amended his application to allege Plaintiff's entitlement to disability insurance benefits for a closed period running from February 19, 2008 (the alleged onset date) until November 1, 2010 (one year after Plaintiff's October 29, 2009 lumbar fusion). (Tr. 36).

An unfavorable decision was rendered by the Commissioner, through the Administrative Law Judge (ALJ), on October 24, 2011. (Tr. 21-27). The ALJ found that Plaintiff had not been under a disability from the alleged onset date of February 19, 2008 through September 30, 2009, the date Plaintiff was last insured. The ALJ did not discuss Plaintiff's entitlement, if any, to a closed period of disability. Plaintiff's request for review was denied by the Appeals Council on November 6, 2012. (Tr. 6-8). The ALJ's decision rested as the final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). The ALJ's final decision is now ripe for review under 42 U.S.C. § 405(g).

## II.     STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor

Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III.    ALJ'S DETERMINATION

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the

claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ issued an unfavorable decision based on the evidence contained in the administrative record. Specifically, the ALJ found:

1.   Plaintiff met the insured status requirements of the Social Security Act until September 30, 2009.

2.   Plaintiff did not engage in substantial gainful activity between February 19, 2008 (the alleged onset date) and September 30, 2009 (the date last insured).

3.   Plaintiff's status post lumbar fusion qualified as a severe impairment through September 30, 2009.

4.      Plaintiff's impairment(s) did not meet or medically equal any of the Listings between February 19, 2008 and September 30, 2009. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments).

5.      Between February 19, 2008 and September 30, 2009, Plaintiff maintained the residual functional capacity to perform the full range of sedentary work.

6.      Through September 30, 2009, Plaintiff was unable to perform his past relevant work as a welder-fitter because that work is performed at a medium exertion level.

7.      Plaintiff was born on August 6, 1975.  And so, he was 34 years old on the date last insured (September 30, 2009), which qualified him as a younger individual. *See* 20 C.F.R. § 404.1563(c) (a "younger" individual is "under age 50").

8.      At the relevant time, Plaintiff had a high school education and the ability to communicate in English.

9.      Application of the Medical Vocational Guidelines (Grids) meant the transferability of Plaintiff's job skills was not material to the ultimate issue of disability.

10.     Based on Plaintiff's age, education, work experience, and RFC, Plaintiff was not disabled between February 19, 2008 and September 30, 2009 under Rule 201.28 of the Grids.

(Tr. 23-27).

## IV.     DISCUSSION

On appeal, Plaintiff's first assignment of error is that substantial evidence does not support the ALJ's RFC determination and ultimate disability finding because: (1) the closed period of disability requested by Plaintiff's attorney was not properly considered by the ALJ; (2) Dr. Evans' opinion that Plaintiff should avoid surgery "does not support the ALJ's decision"; (3) and "the ALJ actually followed the reasoning and adopted the findings of the SDM [(single decision maker)], in direct violation of agency policy." (R. Doc. 11 at 7-9).  Similarly, Plaintiff's third assignment of error — that the ALJ "improperly rejected" his allegations of "pain and restriction" without assessing Plaintiff's credibility — challenges the soundness of the RFC determination. (R. Doc. 11 at 12-14).  In his second assignment of error, Plaintiff suggests the

ALJ's failure to explain his unfavorable step 3 determination warrants remand, as Plaintiff's impairment met Listing 1.04A (Disorders of the Spine). (R. Doc. 11 at 10-12). Finally, Plaintiff asks the Court to remand because the ALJ's findings at step 5 were made without sufficient VE testimony. (R. Doc. 11 at 14-15). The Court will address each of the arguments, although not in the order presented.

**A.      Listing 1.04A (Disorders of the Spine)**

Plaintiff's second assignment of error is that the ALJ's adverse finding at step 3 is legally deficient because the ALJ did not consider whether Plaintiff met Listing 1.04A, or otherwise explain his finding. At step three, the ALJ considers the severity of the claimant's impairments without regard to vocational factors. The ALJ applies the Social Security Administration's Listing of Impairments, which "describes for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). The criteria in the Listings are "demanding and stringent." *Falco*, 27 F.3d at 162. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The ALJ should identify the listed impairment for which the claimant's symptoms fail to qualify and provide an explanation as to how he or she determined that the symptoms are insufficiently severe to meet any listed impairment. A bare and summary conclusion that a plaintiff does not meet the criteria of any Listing is beyond meaningful judicial review. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). But, even if the ALJ fails to explain an adverse determination at step three, a reviewing court must still evaluate whether the error was harmless. *Audler*, 501 F.3d at 448.

Here, the ALJ summarily determined: "Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments . . . ." (Tr. 23). Despite Plaintiff's contention that he met Listing 1.04A from his February 19, 2008 alleged onset date until his October 2009 spinal fusion (Tr. 46), the ALJ made no mention of Listing 1.04A or any other Listing at step 3 of the analysis. (Tr. 23). Plaintiff contends that this "lack of explanation . . . warrants relief," considering there is record "evidence which appears to satisfy Listing 1.04." (R. Doc. 11 at 12). The Court agrees with Plaintiff to the extent he argues the ALJ's "lack of explanation" was inappropriate. The ALJ fails to point to any supporting medical evidence, or otherwise explain his finding at step 3; this conclusory determination was in error. *See Audler*, 501 F.3d at 448.

Even still, to be entitled to relief Plaintiff must not only establish that the ALJ erred, but that this error casts into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). In other words, the Court must still determine whether that error was harmless. *Morris*, 864 at 334. Procedural perfection is not required in administrative hearings, and a court will not vacate a judgment unless "the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Thus, Plaintiff must establish that the ALJ's error at step 3 was not harmless because the record supports that he in fact meets Listing 1.04A. *See Morris*, 864 F.2d at 335.

To meet Listing 1.04, a claimant must first establish a severe diagnosed spinal disorder[3] "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. pt. 404, subpt. P., app. 1 § 1.04. In addition to the diagnostic component, a claimant must satisfy one of Listing 1.04's three subparts, 1.04A, 1.04B, or 1.04C — i.e., the severity

---

[3] Listing 1.04 provides the following examples of spinal disorders: "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture." 20 C.F.R., pt. 404, subpt. P, app. 1 § 1.04.

component. Each subpart describes different criteria which, if satisfied, prove the claimant's diagnosed spinal disorder is also severe enough to satisfy the Listing. To meet the criteria of Listing 1.04A, the record must contain sufficient evidence of (a) "nerve root compression characterized by neuro-anatomic distribution of pain," (b) "limitation of motion of the spine," (c) "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss," and (d) "if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R., pt. 404, subpt. P, app. 1 § 1.04A. Plaintiff insists that he meets all of the criteria to satisfy subpart A of Listing 1.04. The Court disagrees.

According to Plaintiff, he "submitted a brief prior to the hearing on August 24, 2011, which described unrelenting left leg radicular pain and restriction of movement which eventually required" a lumbar fusion at the L5-S1 vertebra in October of 2009. (R. Doc. 11 at 10). While mostly citing to his own pre-hearing brief, Plaintiff contends the record documents findings of nerve root compression, positive straight leg raising test, numbness and weakness in the right lower extremity, severely restricted range of motion in the lumbar spine, and decreased motor strength. (R. Doc. 11 at 10) (citing Tr. 212 (medical records); Tr. 288-89 (Pl.'s pre-hearing brief)).

Contrary to Plaintiff's assertions, the record does not support a favorable finding at step three. The arguments presented in Plaintiff's pre-hearing brief do not qualify as objective medical evidence. Otherwise, Plaintiff points to certain evidence that could satisfy some, but not all of the criteria of Listing 1.04A. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

For example, Plaintiff focuses on the findings of an April 2, 2008 MRI of his lumbar spine to establish nerve root compression at the S1 vertebra. (Tr. 212) (disc herniation at the L5-S1 vertebra, "which very marginally deviates the right S1 nerve root near its origin, but does not result in central canal or foramen stenosis"). However, an MRI of Plaintiff's sacral spine (S1-S5 vertebrae), also conducted on April 2, 2008 and interpreted by the same radiologist, found no evidence of nerve root impingement at the S1 vertebra (Tr. 213). *See* Thomas Stedman, *Stedman's Medical Dictionary* (*Stedman's*), 793810, 983300 (27th ed. 2000) (sacrum consists of S1-S5 vertebrae and nerve roots). The absence of nerve root impingement at the S1 vertebra is also consistent with the lack of central canal and foramen stenosis noted in Dr. Gary Lum's interpretation of Plaintiff's lumbar MRI (Tr. 212). *See Nieves v. Astrue*, 2013 WL 1192013, at *5 (W.D. Tex. March 21, 2013) (A "severe" rating of stenosis signifies . . . there is at least moderate compression of the nerve root. . . . A rating of moderate indicates that there may be mild compression . . . ."); *Spratley v. Astrue*, 2008 WL 5330563, at *7 (S.D. Miss. Dec. 12, 2008) ("The record is clear that Spratley's spinal disorder was characterized by nerve root compression. Spratley submitted the records . . . which revealed that Spratley suffered from spinal stenosis."). And while Plaintiff now contends that he historically suffered from "unrelenting leg radicular pain," he inconsistently reported to Dr. Evans on March 25, 2009 that he only experienced "occasional" radicular pain in his right leg. (Tr. 204). Consistently, Dr. Evans noted that back pain remained Plaintiff's chief complaint. (Tr. 209).

Next, Plaintiff failed to meet Listing 1.04A's requirement of positive straight leg raising tests in both the seated and supine positions. The Court has found only 4 instances of straight leg raising tests throughout the record — 2 positive and 2 negative. (Tr. 206, 234, 246, 254). However, neither of the two positive results indicate whether the tests were performed in both

the seated and supine positions, as is required by the Listing. *Miller v. Astrue*, 2012 WL 3255595, at *5 (M.D. La. June 25, 2012) (Plaintiff was not disabled at step three, as "Listing 1.04 requires positive straight leg raise tests in both the sitting and supine positions, and the record is devoid of any evidence that the few positive straight leg raise tests conducted on plaintiff occurred in both the sitting and supine positions.").

Listing 1.04 also requires motor loss accompanied by sensory or reflex loss. Evidence of motor loss includes muscle weakness or atrophy. *See, e.g., Zimmerman v. Astrue*, 288 F. App'x 931, 937 (5th Cir. 2008) (Claimant did not meet Listing 1.04A where claimant's "motor strength was '5/5 in all muscle groups,' suggesting no motor loss."); *Pannell v. Astrue*, 2012 WL 4341813, at *4 (N.D. Tex. Sept. 21, 2012) ("motor loss (as shown by muscle weakness)"); *Davis v. Astrue*, 2009 WL 2408175, at *3 (S.D. Tex. Aug. 3, 2009) (Listing 1.04A was not met where "the record did not contain evidence of any motor or reflex loss or atrophy, and in fact the evidence indicated 'muscle strength is 5/5 in the lower extremities. That is, no weakness. Hand grip is good. No muscle atrophy was noted.'"). Evidence of sensory loss includes numbness and paresthesia. *See Strong v. Astrue*, 2011 WL 7394717, at *4 (W.D. La. Dec. 23, 2011) ("numbness" constitutes evidence of "[s]ensory and reflex loss"); *Williams v. Astrue*, 2010 WL 989216, at *4 (W.D. La. March 15, 2010) ("parasthesia or sensory loss").

Here, Plaintiff's muscle strength was consistently rated as either active or normal by his examining physicians. (Tr. 234) (Plaintiff exhibited either 4/5 or 5/5 motor strength on December 22, 2008); (Tr. 277) ("no motor deficit" found on December 3, 2008); (Tr. 205) (motor strength was 5/5 on March 25, 2009). And while Dr. Joseph Boucree observed an antalgic gait on December 22, 2008 (Tr. 234), Plaintiff otherwise presented with a normal gait and showed no signs of atrophy. (Tr. 206). Plaintiff did exhibit decreased sensation at the L5-S1

vertebrae on December 22, 2008. (Tr. 233). But otherwise, Plaintiff's records indicate findings of "no sensory deficit" on December 3, 2008 (Tr. 277) and "intact" sensation on March 25, 2009 (Tr. 206). Consistently, Plaintiff "denie[d] any loss of strength" or "sensation" on December 3, 2008. (Tr. 277).

Moreover, these few instances of favorable evidence are insufficient to establish disability at step three. *See* 20 C.F.R., pt. 404, subpt. P, app. 1 § 1.00D ("Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation."). The Act requires a claimant to demonstrate consistent satisfaction of the Listing's criteria over a period that lasts or is expected to last at least 12 months. The intermittent abnormal findings mentioned above are insufficient in both duration and consistency to establish disability under Listing. 1.04A. *See Nieves v. Astrue*, 2013 WL 1192013, at *7 (W.D. Tex. March 21, 2013) (Listing 1.04A was not met where positive leg raising tests were only intermittently positive and failed to indicate the position – sitting or supine – in which they were performed); *Carrillo v. Astrue*, 2010 WL 2136438, at *4 (W.D. Tex. May 26, 2010) (substantial evidence supported ALJ's finding that claimant did not meet Listing 1.04A where record did not show positive straight leg raising tests, both sitting and supine, "for any period of 12 continuous months"); *Holman v. Astrue*, at *8 (S.D. Tex. Aug. 30, 2011) ("[I]t was not error for the ALJ to require a history of objective medical documentation showing that – over the period of relevant time – Holman consistently experienced neurological deficits, such as muscle weakness or sensory loss, as a result of her cervical radiculopathy."); *Trejo v. Comm'r of Soc. Sec.*, 2011 WL 3862332, at *10 (E.D. Mich. June 27, 2011) (Listing 1.04A was not met where "plaintiff failed to establish positive straight-leg tests 'over a period of time' let alone over the requisite 12–month duration. Plaintiff had only one positive straight-leg test result . . . .");

*Lawson v. Astrue*, 2010 WL 1375171, at *4 (W.D. Va. April 5, 2010) (Occasional findings of sensory loss and positive straight leg raising tests were insufficient; "while Lawson has exhibited all of the criteria of § 1.04(A) at one time or another, there is [no] evidence . . . that she has exhibited all of the requisite symptoms consistently or contemporaneously."); *Ortiz v. Astrue*, 2013 WL 772677, at *4 (D. Mass. Feb. 27, 2013) (Listing 1.04A was not met where "Ortiz also did not demonstrate  positive straight leg raise test results for a continuous twelve month period.").

### B.  Credibility

The Administration requires the decision to "contain specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96-7P, 1996 WL 374186, at *4 (July 2, 1996).  At the same time, "[p]rocedural perfection in administrative proceedings is not required" and remand will not be warranted "unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *see also Haywood v. Sullivan*, 888 F.2d 1463, 1469-70 (5th Cir. 1989) (failure to explain credibility findings was harmless error where decision summarized claimant's testimony and objective medical evidence and substantial evidence supported finding); *Story v. Astrue*, 294 F. App'x 883, 884 (5th Cir. 2008) (ALJ's consideration of subjective testimony "satisfied his obligation" to make specific credibility findings); *Salgado v. Astrue*, 271 F. App'x 456, 462-63 (5th Cir. 2008) (ALJ's previous discussion of claimant's allegations provided sufficient reasons for otherwise conclusory credibility finding).

Plaintiff contends his "allegations of pain and restriction were improperly rejected without the assessment of the credibility which is required by the regulations." (R. Doc. 11 at 12).  In Plaintiff's mind, the "record contains no evidence to suggest malingering [or]

exaggeration." (R. Doc. 11 at 13). Plaintiff suggests the ALJ "improperly rejected the claimant's credibility on the basis of alleged inconsistencies about how the injury occurred and because the claimant opted for surgery when the ALJ read the record as recommending more conservative treatment." (R. Doc. 11 at 13).

To begin, the ALJ fully discussed the objective medical evidence contained in the record, along with Plaintiff's own subjective testimony about his symptoms and limitations when assessing his credibility, as part of the overall RFC determination. (Tr. 24-25). As Plaintiff suggests, the ALJ's credibility analysis does note Plaintiff's inconsistent accounts of his impairment's origin. (Tr. 25). However, Plaintiff's objection is largely immaterial, as the ALJ simply gave an accurate account of the record. (Tr. 25, 201, 232, 264). The ALJ did not cite Plaintiff's inconsistencies because the actual origin of his back impairment had any importance.[4] Rather, the ALJ explained that the relevance of these inconsistencies was limited to Plaintiff's credibility. (Tr. 25).

In his credibility analysis, the ALJ also explains that less conservative treatments were recommended in addition to surgery, and that Plaintiff chose to undergo surgery. (Tr. 25). This is likewise accurate. (Tr. 201, 202, 203, 207, 232, 270). Nonetheless, Plaintiff contends that the opinion of Dr. Jorge Evans (Tr. 201-07), who reviewed Plaintiff's earlier medical records[5] and examined him on March 25, 2009, was misinterpreted by the ALJ. Specifically, Plaintiff believes the ALJ read Dr. Evans' opinion as suggesting a spinal fusion, which was eventually performed on October 29, 2009 (Tr. 271-73), was "unwarranted." (R. Doc. 11 at 13). However,

---

[4] The root of an impairment is not relevant to whether it is disabling. *See Colwell v. Gardner*, 386 F.2d 56, 73 (6th Cir. 1967) ("The ultimate question . . . is not as to the exact causation of a disabling impairment;" instead, it is whether an impairment exists and does the impairment render the claimant unable to work.). The decision only indicates the ALJ's proper understanding of and adherence to this principle of law.

[5] The medical records of Dr. Lea and Dr. Sandra Waltz are summarized by Dr. Evans (Tr. 201-04), but the actual records are not part of the administrative transcript.

Plaintiff's contention is not supported by the ALJ's actual decision or Dr. Evans' medical records.

In his March 25, 2009 exam notes, Dr. Evans explained Plaintiff's medical history, including a July 10, 2008 functional capacity evaluation (FCE) finding Plaintiff could perform work at a "low-medium physical demand and capacity." (Tr. 203). Dr. Evans later reported his agreement with the July 10, 2008 FCE's findings. Additionally, Dr. Evans noted that while receiving 2 transforaminal injections to reduce lower back pain, Plaintiff reported that his symptoms were "markedly better" for at least one week after the first injection. (Tr. 203). However, Plaintiff inconsistently advised Dr. Evans that he "received no relief from either injection." (Tr. 203). Dr. Evans' physical examination of Plaintiff revealed reflexes that were "2+ bilaterally," sensation was intact, straight leg raising test was negative, there were no signs of atrophy and Plaintiff's gait was normal. (Tr. 206). Based on his examination and review of Plaintiff's complete medical history, Dr. Evans agreed with the FCE's finding that Plaintiff could perform work at a low-medium capacity. (Tr. 206). He also suggested Plaintiff "would be a good candidate for vocational rehab" and found that Plaintiff had reached maximum medical improvement "without further surgery." (Tr. 206). Based on the American Medical Associations Guidelines, Dr. Evans "put [Plaintiff] at a 15% to 20% total anatomical impairment rating." (Tr. 206). Overall, Dr. Evans explained that he "would not recommend surgery on [Plaintiff's] back unless he is suffering from intolerable pain or progressive neurological weakness." (Tr. 207). Dr. Evans suggested that Plaintiff undergo a "lumbar discography before proceeding with any surgical intervention. If it is confirmed that the patient's pain is coming from L5-S1, [Dr. Evans'] recommendation would be to do an anterior lumbar discotemy and fusion." (Tr. 207).

The ALJ appropriately cited Dr. Evans' entire recommendation. (Tr. 25). The ALJ ultimately determined that the "medical records indicate that the claimant chose surgical intervention when more conservative treatment options were recommended." (Tr. 25). Contrary to Plaintiff's suggestion, the ALJ did not solely rely on Dr. Evans' exam notes when making this determination. Instead, he cited to record evidence from multiple medical sources that Plaintiff had only undergone two steroid injections, was prescribed injections, ibuprofen, infrequent narcotics, and physical therapy, and was encouraged to continue with "progressive activities." (Tr. 25, 201, 202, 203, 207, 232, 270).

Most importantly, the ALJ's credibility (and RFC) discussion is not limited to two findings that Plaintiff contests. Plaintiff ignores the remaining analysis, including the objective evidence relied upon by the ALJ. Indeed, the record shows that at the time Plaintiff reported improvement in his condition after physical therapy (Tr. 201), Dr. Lea recommended that he return to work after noting that Plaintiff received "good relief" from steroid injections on March 19, 2008 (Tr. 202). However, Plaintiff later inconsistently told Dr. Evans on March 25, 2009 that the March 2008 steroid injections did not provide any relief. (Tr. 202). Plaintiff later insisted that he experienced "unrelenting leg radicular pain" between February 19, 2008 and November 1, 2010. (R. Doc. 11 at 10). However, on March 25, 2009 he told Dr. Evans that he only experienced occasional pain in his leg, and that his chief complaint was pain in his lower back. (Tr. 204). Plaintiff also now contends that only *after* the June 15, 2009 discography (Tr. 284) was "obtained, the decision was made to proceed" with surgery. (R. Doc. 11 at 8). This contention is contradicted throughout the record. (Tr. 227-236). Dr. Joseph Boucree's treatment notes confirm that Plaintiff decided to have surgery as early as December 22, 2008 (Tr. 236) and that this decision did not change and, most importantly, was not based on the results of his June

15, 2009 discography. (Tr. 227-236). In fact, Plaintiff confirmed on two separate occasions that the surgery was only not performed until October 2009 because he was waiting on approval from his worker's compensation provider. (Tr. 40, 204). Additionally, the ALJ cited Plaintiff's testimony that he managed his own personal care (Tr. 36, 37, 175), performed household chores (Tr. 37), went out alone and drove a car (Tr. 177). Plaintiff also provided that he cared for his kids (Tr. 175). Additionally, Plaintiff reported that he could walk ¼ of a mile, lift 15 to 20 pounds and stand or sit for 25 to 30 minutes unbroken. (Tr. 38-39). Considering the record as a whole, and the detailed analysis performed by the ALJ, the Court finds that substantial evidence supports the ALJ's credibility (and RFC) finding.

### C. Substantial Evidence Supports the RFC Assessment

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ's RFC decision can be supported by substantial evidence even if the ALJ does not specifically discuss all the evidence that supports his or her decision or all the evidence that he or she rejected. *Falco*, 27 F.3d at 163-64. A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The court "may only scrutinize the record" and take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision. *Leggett*, 67 F.3d at 564. Accordingly, a "no substantial evidence" finding is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings to support the ALJ's decision. *Johnson*, 864 F.2d at 343-44.

Here, the ALJ determined Plaintiff could perform the full range of sedentary work. Sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting," some walking and standing is often necessary. "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). As it is used here, the term "'occasionally' means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday." SSR 96-9P, 1996 WL 374185, at *3 (July 2, 1996). For that reason, sitting "would generally total about 6 hours of an 8-hour workday" in a sedentary job. SSR 96-9P at *3.

Plaintiff contends the RFC determination is not supported by substantial evidence for two main reasons. First, Plaintiff suggests the ALJ misinterpreted Dr. Jorge Evans' opinion as "provid[ing] support for a finding that [Plaintiff's October 29, 2009 spinal fusion] was unnecessary and/or ill advised." (R. Doc. 11 at 8). As the Court previously explained, Plaintiff's argument regarding the ALJ's interpretation of and emphasis on Dr. Evans' opinion with regard to surgery is unfounded.

Second, Plaintiff contends the ALJ violated SSA policy by wholly adopting the RFC previously assessed by the state agency's single decision maker (SDM) (Tr. 58-65). (R. Doc. 11 at 9-10). Plaintiff offers this argument despite acknowledging that the ALJ makes absolutely no mention of the SDM's findings in his decision.

Plaintiff's application was denied at the initial level by the SDM. (Tr. 58-65). In assessing Plaintiff's RFC, the SDM found he could lift 20 pounds occasionally and 10 pounds frequently; stand or walk for up to 4 hours in an 8-hour workday and sit for up to 6 hours, as Plaintiff needed to alternate between sitting and standing. (Tr. 61-62). Additionally, the SDM

found that Plaintiff could frequently climb, balance, kneel and crawl; but was limited to occasional crouching and stooping. (Tr. 62). While the SDM recorded Plaintiff's RFC as "sedentary" (Tr. 63), he found Plaintiff had the capacity to stand or walk for up to 4 hours, which exceeds that particular exertional requirement for sedentary work. As such, the SDM correctly noted that Plaintiff's assessed exertional limitations fell within or between the light and sedentary rages of work. (Tr. 64) (citing SSR 83-12, 1983 WL 31253, at *1 (Jan. 1, 1983) (setting "out the process of using the numbered rules in adjudicating those claims in which the exertional components of the RFC are less or greater than those of a specifically defined exertional range of work").

Contrary to Plaintiff's insistence, the ALJ did not wholly adopt the SDM's RFC. To begin, the ALJ does not make a single reference to the SDM or the SDM's findings. More importantly, the ALJ found Plaintiff could perform the full range of sedentary work. (Tr. 23-26). Unlike the SDM, the ALJ determined Plaintiff could only stand or walk for up to 2 hours. The ALJ also did not assess any additional postural (or non-exertional) limitations. By contrast, the SDM limited Plaintiff to only occasional stooping and crouching. (Tr. 62). Plaintiff is simply incorrect that the ALJ erroneously adopted the opinion of the SDM. As Plaintiff does not offer any additional assignments of error in connection with the RFC assessment, the Court finds that substantial evidence supports the RFC determination.

## D. Vocational Expert

Plaintiff next argues that the ALJ's questions to the vocational expert are unreliable because they were based on incorrect credibility and RFC assessments. In addition, Plaintiff now confusingly argues that the ALJ erred by not including the postural limitations assessed by the SDM into his hypotheticals to the VE. First, the Court has already determined the ALJ made

sound credibility and RFC assessments. Considering that all of the limitations recognized by the ALJ were properly incorporated into his hypotheticals to the VE, there was no error in the ALJ's solicitation of testimony from the VE. *See, e.g.*, *Masterson v. Barnhart*, 309 F.3d 267, 273-74 (5th Cir. 2002) (rejecting argument that ALJ relied on VE's answers to "improper hypothetical questions" because hypotheticals incorporated all impairments recognized by ALJ and court found ALJ's decision supported by substantial evidence). On that same note, the ALJ appropriately gave no weight or consideration to the SDM's opinion when determining Plaintiff was capable of performing the full range of sedentary work. It then logically follows that the ALJ properly excluded the non-exertional limitations assessed by the SDM from the RFC assessment and his hypothetical questions to the vocational expert.[6] And because substantial evidence supports the absence of non-exertional limitations that would erode the occupational base for sedentary work, application of the medical vocational guidelines was appropriate. *Cf. Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) (if the claimant has both exertional and nonexertional limitations and the nonexertional limitations significantly affect the RFC, then the ALJ must base his or her findings on a vocational expert's testimony or other similar evidence). As such, no error occurred.

---

[6] Even still, the Court notes that the non-exertional limitations of occasional stooping and crouching do not significantly erode the occupational base for sedentary work, and by extension, do not preclude reliance on the Grids. *See Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) (if the claimant has both exertional and nonexertional limitations and the nonexertional limitations significantly affect the RFC, then the ALJ must base his or her findings on a vocational expert's testimony or other similar evidence). Generally, "[p]ostural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996). "By its very nature, work performed primarily in a seated position," like sedentary work, "entails no significant stooping." SSR 83-10, 1983 WL 31251, at *5 (Jan. 31, 1983). And while a "complete inability to stoop would significantly erode the unskilled sedentary occupational base," a limitation of occasional stooping would not. SSR 96–9P, 1996 WL 374185, at *8 (July 2, 1996).

### E.  Closed Period of Disability

As a final matter, Plaintiff argues that the ALJ erred in failing to consider whether he was disabled for a closed period between February 19, 2008 (the alleged onset date) and November 1, 2010 (one year following his lumbar fusion).  The ALJ determined that Plaintiff was not entitled to disability insurance benefits for any period of time because he failed to establish disability on or before September 30, 2009 — the date last insured. *See Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).  The Court has already determined that the ALJ's determination that Plaintiff was not disabled on or before September 30, 2009 is supported by substantial evidence. In order to be entitled to benefits for the closed period alleged, Plaintiff would need to establish that he was disabled on or before September 30, 2009.  Because he did not, the ALJ appropriately failed to consider whether Plaintiff was disabled between October 1, 2009 and November 1, 2010. *See Moreland v. Astrue*, 2009 WL 3246694, at *5 (N.D. Miss. Sept. 30, 2009) (Title II claimant was not entitle to a closed period of disability from October 30, 2002 to July 31, 2007 where claimant could not establish disability on or before September 30, 2002 — the date last insured); *Harvey v. Astrue*, 2009 WL 2634399, at *9 (M.D. Fla. Aug. 24, 2009) (claimant not entitled to closed period of disability from her November 1, 2004 alleged onset through June 14, 2006, where claimant could not establish disability before her date last insured, December 31, 2005); *McIntyre v. Colvin*, 2013 WL 1364272, at *1 (D. Ariz. April 3, 2013) ("McIntyre seeks disability insurance benefits for a closed period of disability beginning on November 2, 2006 and ending on May 18, 2009. McIntyre's date last insured . . .  and thus the date on or before which she must have been disabled, was September 30, 2011.").

# V.      CONCLUSION

For the reasons given above, the Court **RECOMMENDS** that the decision of the

Commissioner be **AFFIRMED** and that Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on January 22, 2015.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**